# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| TRACY FRY, individually, and on behalf of all others similarly situated, | **Case No.:** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| MIDFLORIDA CREDIT UNION, | |
| Defendant. | DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Tracy Fry ("Plaintiff"), by her attorneys, hereby brings this class and representative action against MidFlorida Credit Union ("MFCU" or "Defendant"). All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff to assert claims in her own right and in her capacity as the class representative of all others similarly situated. This class action seeks monetary damages, restitution, and injunctive relief against MFCU arising from MFCU's breach of its contracts with consumers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that MFCU charged overdraft fees for transactions for which there was money in

1

the checking account to cover said transactions, thereby breaching the express terms of its consumer contract. Plaintiff also alleges that because it provided inaccurate and misleading overdraft information to its customers, under the Electronic Fund Transfer Act, 12 C.F.R. § 1005, MFCU was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges. However, MFCU did charge its customers, including Plaintiff, overdraft fees for ATM and debit card charges.

## PARTIES

2.      Plaintiff is a resident of Tampa, Florida and was as a member of MFCU at all times relevant to the class action allegations.

3.      Based on information and belief, Defendant MFCU is a state chartered credit union with its headquarters located in Lakeland, Florida.

4.      MFCU which also owns and/or operates MFCU branch locations, and its agents, partners, joint ventures, subsidiaries and/or affiliates, is a "financial institution" within the meaning of the Electronic Fund Transfer Act, 12 C.F.R. § 1005.2(i).

5.      Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

6.      As to the conduct alleged herein each act was authorized, ratified, or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2

Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of plaintiffs aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than the Defendant.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of and does business in this District and a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

**A.      MFCU's Unlawful Overdraft Program**

9.      MFCU is a Florida based credit union with approximately $2.2 billion in assets that provides banking services to over 214,000 members through 40 branches in Florida.   One of the services offered by MFCU to consumer banking customers is a checking account.   One of the benefits MFCU offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well as the ability to write checks, withdraw from ATM (automated teller machine), schedule ACH (Automated Clearing House) transactions such as, certain recurring payments, and other type of transaction items that debit from the checking account.   In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), MFCU assesses overdraft fees to its customers when it determines that the customer's account is overdrawn.

10.      Credit unions, like banks, have increasingly turned to overdraft fees as a highly lucrative profit center.   An FDIC (Federal Deposit and Insurance Corporation) report estimated that overdraft fees represent 74% of the total service charges that are imposed on deposit accounts in the United States.   According to the June 11, 2013, report entitled, "CFPB Study of

Overdraft Programs"[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

11.     The high cost of an overdraft fee is usually unfairly punitive.  In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake.  (May 2012 Pew Charitable Trust report entitled "Overdraft America:  Confusion and Concerns About Bank Practices", at p. 4).   More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p. 8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id.*, at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id.*, at p. 10).

12.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees.  (*Id.*, at p. 1).  A 25 year-old is 133% more likely to pay an overdraft penalty fee than a 65 year old.  (*Id.*, at p. 3).  More than 50% of the customers assessed overdraft fees earned under $40,000 per year.  (*Id.*, at p. 4).  Non-whites are 83% more likely to pay an overdraft fee than whites.  (*Id.*, at p. 3).

13.     In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues has occurred over the past few years.  The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars.

14.     The federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.   In 2010, the Federal Reserve Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer.  12 C.F.R. § 1005.17 ("Opt-In Rule" or "Regulation E").

15.     To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected, checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of the Opt-In Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

16.     At all relevant times, MFCU has had an overdraft program in place for assessing overdraft fees on ATM and debit card transactions, which is:  (1) contrary to the express terms of

its Opt-in contract with members; (2) contrary to how MFCU represents its overdraft program to its members; and (3) contrary to what members expect when assessed overdraft fees.

17. MFCU contracts with its members that an overdraft occurs when there is not enough money in the account to cover a transaction, but MFCU pays it anyway. *See* Exhibit 1, "What You Need to Know About Overdrafts and Overdraft Fees" ("Opt-In Agreement") attached hereto.

18. MFCU's contractual promise in the Opt-In Agreement to only assess overdraft fees when there is not enough money in the account to cover the item was also provided to customers in other disclosures and marketing materials it provided to customers.

19. However, contrary to the Opt-In Agreement and other marketing materials indicating that MFCU will only charge overdraft fees when there is not enough money in the checking account to cover the transaction, MFCU's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (available balance) rather than the actual balance.  The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy.  The use of an internal available balance rather than the money in the account to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly contrary to the language in the Opt-In Agreement.  The result is that MFCU improperly charges members overdraft fees in situations when there is money in the account to cover the transaction.

20. This practice is in breach of MFCU's Opt-In Agreement.  Additionally, the practice of charging overdraft fees even when there is sufficient money in the account to cover

the transaction is inconsistent with how MFCU describes the circumstances of when it assesses overdraft fees in other customer materials. Further, MFCU has failed to inform customers of the conditions under which overdraft fees will be assessed in both the Opt-In Agreement.

21.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.

22.     Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Tracy Fry**

23.     Plaintiff was harmed by Defendant's practice of charging overdraft fees when there was money in the account to cover the transaction. Plaintiff entered into an agreement, and opted-in the overdraft program with MFCU, wherein MFCU contracted to charge overdraft fees only if there was not money to cover the transaction. MFCU breached this agreement, and in breaching the Opt-In Agreement, violated Regulation E. It will be necessary to obtain Defendant's records to determine each occasion when MFCU engaged in this practice and the damage to Plaintiff as a result. However, to give just one example, on December 26, 2014, Plaintiff was charged an overdraft fee of $30 on a debit card/Point-of-Sale transaction despite having money in her account to cover the transaction. Accordingly, it is with reasonable belief that a complete review of Plaintiff's and MFCU's records will show multiple instances MFCU improperly charged Plaintiff overdraft fees for transaction(s) despite Plaintiff's having money in her account to cover the transaction(s).

24.     Moreover, the assessment and unilateral taking of improper overdraft fees, further reduces the balance and amount of funds in the account, resulting in, and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for

which MFCU assesses further overdraft fees.  As such, a complete evaluation of MFCU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## CLASS ACTION ALLEGATIONS

25.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

26.     Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes.

27.     The "Class" is composed of two potential classes:

**The Positive Balance Class:**

> **All US residents who have or have had accounts with MFCU who incurred overdraft fees for ATM and non-recurring debit card transactions when there was money in the checking account to cover the transactions in the five years preceding the filing of this Complaint.**

**The Regulation E Class:**

> **All US residents who have or have had accounts with MFCU who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of the opt-in agreement which provided inaccurate or misleading information on MFCU's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transactions since August 15, 2010.**

28.     Excluded from the above Class is: (1) any entity in which Defendant have a

8

controlling interest; (2) officers or directors of Defendants; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

29.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

30.     This action has been brought and may be properly maintained on behalf of each member of the Class proposed herein under Federal Rule of Civil Procedure 23.

31.     **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

32.     Upon information and belief, Defendants have databases, and/or other documentation, of its customers' transactions and account enrollment. These databases and/or documents can be analyzed by an expert to ascertain which of MFCU's customers have been harmed by its practices and thus, which customers qualify as Class members. Further, the Class definitions identify groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify him or herself as having a right to recover. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

33.     **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – This action involves

common questions of law and fact.  These common questions of law and fact take precedence over those questions that may only affect individual Class members.  The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following:

    a. Whether Defendant had standardized Opt-In Agreements during the Class period that was provided to its customers;

    b. Whether Defendant's conduct breached the Opt-In Agreement by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had money to cover the transactions;

    c. Whether Defendant's conduct violated state consumer protection laws; and

    d. Whether Defendant's conduct violated 12 C.F.R. § 1005.17.

34. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to Defendant's customers' accounts are uniform for Plaintiff and all Class members.

35. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Plaintiff and her counsel intend to prosecute this action

vigorously.

36.     **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** –
The common questions of law or fact identified herein and to be identified through discovery
take precedence over questions that may affect only individual Class members.  Further, the class
action is superior to all other available methods for the fair and efficient adjudication of matter.
Because the injuries suffered by the individual Class members may be relatively small, the
expense and burden of individual litigation would make it virtually impossible for Plaintiff and
Class members to individually seek redress for Defendant's wrongful conduct.  Even if any
individual person or group(s) of Class members could afford individual litigation, it would be
unduly burdensome to the courts in which the individual litigation would proceed.  The class
action device is preferable to individual litigation because it provides the benefits of unitary
adjudication, economies of scale, and comprehensive adjudication by a single court.  In contrast,
the prosecution of separate actions by individual Class members would create a risk of
inconsistent or varying adjudications with respect to individual Class members that would
establish incompatible standards of conduct for the party (or parties) opposing the Class and
would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff
knows of no difficulty that will be encountered in the management of this litigation that would
preclude its maintenance as a class action.  As a result, a class action is superior to other
available methods for the fair and efficient adjudication of this controversy.  Absent a class
action, Plaintiff and the Class members will continue to suffer losses, thereby, allowing these
violations of law to proceed without remedy and allowing Defendant to retain the proceeds of
their ill-gotten gains.

37.     Plaintiff contemplates the eventual issuance of notice to the proposed Class

members setting forth the subject and nature of the instant action.  Upon information and belief,
Defendant's own business records and electronic media can be utilized for the contemplated
notices.  To the extent that any further notices may be required, Plaintiff would contemplate the
use of additional media and/or mailings.

     38.    The matter is properly maintained as a class action pursuant to Rule 23(b) of the
Federal Rules of Civil Procedure, in that:

    a.  Without class certification and determination of declaratory, injunctive,
statutory and other legal questions within the class format, prosecution of
separate actions by individual members of the Class will create the risk of:

       1.  Inconsistent or varying adjudications with respect to individual
members of the Class which would establish incompatible standards
of conduct for the parties opposing the Class; or

       2.  Adjudication with respect to individual members of the Class which
would as a practical matter be dispositive of the interests of the other
members not parties to the adjudication or substantially impair or
impede their ability to protect their interests;

    b.  The parties opposing the Class have acted or refused to act on grounds
generally applicable to each member of the Class, thereby making appropriate
final injunctive or corresponding declaratory relief with respect to the Class as
a whole; or

    c.  Common questions of law and fact exist as to the members of the Class and
predominate over any questions affecting only individual members, and a
Class Action is superior to other available methods of the fair and efficient

adjudication of the controversy, including consideration of:

1.    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2.    The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

3.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4.    The difficulties likely to be encountered in the management of a class action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

39.    The preceding allegations in paragraphs 1-38 are incorporated by reference and re-alleged as if fully set forth herein.

40.    Plaintiff and each of the Class members entered into an Opt-in Agreement with Defendant covering the subject of overdraft transactions.  This contract was drafted by and is binding on Defendant.

41.    The Opt-In Agreement authorized Defendant to assess overdraft fees only for ATM and non-recurring debit card transaction(s) for which there was not money in the account to cover the item(s).

42.    Further, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means

13

preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

43. The material terms of the contract also included the implied covenant of good faith and fair dealing, whereby Defendants covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

44. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendants' misconduct.

45. Defendants breached the expressed terms of the contract by, inter alia, assessing overdraft fees when there was money in the account to cover the transaction(s).

46. Alternatively, Defendants breached the implied covenant of good faith and fair dealing based on this practice.

47. As a proximate result of Defendants' breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

### SECOND CAUSE OF ACTION
**(Violation of Florida's Deceptive and Unfair Trade Practices Act
Fla. Stat. § 501.201 *et seq.*)**

48. The preceding allegations in paragraphs 1-38 are incorporated by reference and

re-alleged as if fully set forth herein.

49.     Plaintiff and the members of the Class are consumers as defined by Fla. Stat. §

501.203.  Defendant, MFCU, provides services and therefore is engaged in trade and commerce

as defined by Fla. Stat. § 501.203.

50.     Florida Statute § 501.204(1) declares unlawful "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct or any

trade or commerce."

51.     Defendant's unfair and deceptive practices are likely to mislead and have mislead

the consumer acting reasonably in the circumstances and violate Fla. Stat. § 500.04 and 21

U.S.C. § 343.

52.     Defendants have violated Florida's Deceptive and Unfair Trade Practices Act by

engaging in the unfair and deceptive practices as described herein which offend public policies

and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

53.     Plaintiff and the Class members have been aggrieved by Defendant's unfair and

deceptive practices in that they incurred overdraft fees after being exposed to Defendant's unfair

and deceptive practices.

54.     Pursuant to Fla. Stat. § 501.211(1) Plaintiff and the Class seek a declaratory

judgment and court order enjoining the above-described wrongful acts and practices of

Defendants and for restitution and disgorgement.   Additionally, pursuant to Fla. Stat. §§

501.211(2) and 501.2105, Plaintiff and the Class seek damages, attorneys' fees, and costs.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

55.     The preceding allegations in paragraphs 1-38 are incorporated by reference and

re-alleged as if fully set forth herein.

56.     As a result of the wrongful misconduct alleged above, Defendant unjustly received millions of dollars in overdraft fees.

57.     Because Plaintiff and the Class members paid the erroneous overdraft fees assessed by Defendant, Plaintiff and the Class members have conferred a benefit on Defendants. Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it was conveyed, and yet have voluntarily accepted and retained the benefit conferred.  Should it be allowed to retain such funds, Defendants will be unjustly enriched.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

### FOURTH CAUSE OF ACTION
**(Money Had and Received)**

58.     The preceding allegations in paragraphs 1-38 are incorporated by reference and re-alleged as if fully set forth herein.

59.     Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

60.     As a result, Defendant has in its possession money, which in equity, belongs to Plaintiff and the Class members, and thus, this money should be refunded to Plaintiff and the Class members.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

### FIFTH CAUSE OF ACTION
**(Negligence)**

61.     The preceding allegations in paragraphs 1-38 are incorporated by reference and re-alleged as if fully set forth herein.

62.    In general, people have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person.  Defendant had and continues to have a duty to maintain and preserve its customers' accounts and to prevent diminishment of those accounts though its own wrongful acts.  Specifically, Defendant owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there was money in the account.

63.    Defendant breached this duty by unreasonably mishandling the accounts of its customers, including Plaintiff and the Class members, by taking funds its customers' accounts by way of overdraft fees for transactions under circumstances in which those overdraft fees should not have been assessed.

64.    As a proximate result of Defendant's negligence, Plaintiff and each Class member has been damaged in an amount to be proven at trial.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

### SIXTH CAUSE OF ACTION
### (Violation of Electronic Fund Transfer Act)

65.    The preceding allegations in paragraphs 1-38 are incorporated by reference and re-alleged as if fully set forth herein.

66.    Because of its failure to truthfully and accurately provide the conditions under which an overdraft fee will be assessed, Defendant failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees on customers' accounts through an overdraft program for ATM and non-recurring debit card transactions.

67.    As a result of assessing overdraft fees in circumstances for which it did not garner

the consent necessary to do so pursuant to Regulation E, Defendant has harmed Plaintiff and the Class.

68.     Due to Defendant's failure to comply with 12 C.F.R. § 1005.7, Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 12 U.S.C. § 1693m.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.   For an order certifying this action as a class action;

2.   For compensatory damages on all applicable claims and in an amount to be proven at trial;

3.   For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4.   For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there was money in the account to cover the transaction, and providing accurate and reliable information regarding the overdraft practice;

5.   For costs;

6.   For interest;

7.   For attorneys' fees under the Electronic Fund Transfer Act, Florida Unfair and Deceptive Trade Practices Act, the common fund doctrine, other applicable law, and the customer account agreement; and

8.   For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members demand a trial by jury on all issues so triable.

DATED:  November 24, 2015

BY: _____

John A. Yanchunis, Bar # 324681
jyanchunis@forthepeople.com
Marcio W. Valladares, Bar # 986917
mvalladares@forthepeople.com
Patrick A. Barthle II, Bar # 99286
pbarthle@fortherpeople.com
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida  33602
Ph.:  (813) 223-5505 / Fax:  (813) 222-2434

Richard D. McCune, CA State Bar #132124*
rdm@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Ph.:  (909) 557-1250 / Fax:  (909) 557-1275

Taras Kick, CA State Bar #143379*
taras@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Ph.:  (310) 395-2988 / Fax: (310) 395-2088

**Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff Tracy Fry and the
Putative Class*

# EXHIBIT 1

**What You Need to Know about Overdrafts and Overdraft Fees**
For ATM and Everyday Debit Card Transactions

An overdraft occurs when you do not have enough money in your account to cover a transaction, but MIDFLORIDA pays it anyway. We can cover your overdrafts in two different ways:

- MIDFLORIDA has *standard overdraft practices* that come with your account.
- We also offer *overdraft protection plans*, such as a link to a savings account which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

**What are the standard overdraft practices that come with my account?**
MIDFLORIDA *does* authorize and pay overdrafts for the following types of transactions **available 30 days after account opening:**

- Checks and other transactions made using your checking account number
- Automatic bill payments

MIDFLORIDA *will not* authorize and pay overdrafts for the following types of transactions unless you ask us to (see below):

- ATM transactions
- Everyday debit card transactions

MIDFLORIDA pays overdrafts at our discretion which means we *do not guarantee* that we will always authorize and pay any type of transaction.

If MIDFLORIDA does not authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if MIDFLORIDA pays my ATM and everyday debit card overdrafts?**
Our standard overdraft practices are:

- The first occurrence in a given month will be charged $10.
- Any additional occurrences within that same month will be $30.
- Also, if your account is overdrawn for five or more consecutive days, we will charge an additional $5 per day beginning the sixth day.

There is no limit on the total fees MIDFLORIDA can charge you for overdrawing your account.

Please note: Any account owner, whether primary or joint, can authorize or revoke this service.